212 N.J. Super. 487 (1985)
515 A.2d 804
AMERICA MERCADO AND GILBERTO MERCADO, HUSBAND AND WIFE
v.
STATE OF NEW JERSEY.
Superior Court of New Jersey, Law Division Camden County.
Decided July 12, 1985.
*489 Carl S. Bisgaier, for plaintiffs; Arthur Penn (Margulies, Penn & Margulies), of counsel, appearing at argument and on the brief.
Vincent J. Rizzo, Deputy Atty. Gen. (Irwin I. Kimmelman, Atty. Gen. of N.J.) for defendant, State of New Jersey.
PALESE, J.S.C.
Novel issues have been presented to the court by the State's motion for summary judgment. Plaintiff has instituted suit maintaining a cause of action under the Tort Claims Act.
Some procedural history is necessary to resolve the issues presented. While there is no stipulation of the facts, there is no material dispute with respect to the same.
Norma and Joselito Mercado, twins, were born to Spanish-speaking parents on February 12, 1973. In April 1973 the twins, having been hospitalized for malnutrition and neglect, were removed from the Mercados, together with the eight other Mercado children. The twins were then placed with Richard and Margaret Miller, an English-speaking couple, for foster care. In July 1973 the eight other children were returned to the Mercado home. The twins were never returned. On January 29, 1979, the Child Placement Review Board reported its recommendations that the continued placement outside of the home was in the children's best interests and the placement plan was appropriate for the children's needs.
*490 After this decision, Division of Youth and Family Services (D.Y.F.S.) planned to return the twins to their parents in June 1979. In May 1979 Honorable Robert W. Page, Camden County Juvenile and Domestic Relations Court Presiding Judge, ordered continued placement of the twins with the Millers.
On June 11, 1979, Richard and Margaret Miller filed a complaint seeking custody; a complaint for adoption was also filed in Chancery. The Chancery Court ordered consolidation of the action and held that the adoption proceeding be stayed pending determination of the custody action in Juvenile & Domestic Relations Court.
The custody complaint was specially assigned to Honorable Mary Ellen Talbott and was heard on March 23, 1981  all parties being properly represented by counsel. D.Y.F.S. had previously had its complaint dismissed but was permitted to present witnesses at the trial. In concluding her lengthy and complete opinion, Judge Talbott wrote: "this court finds that clear and convincing evidence has been presented that Norma and Joselito would suffer psychological damage if returned to the Mercados." Parental rights of the Mercados were terminated and guardianship was granted to the Millers. The counterclaim of the Mercados for custody was denied.
An appeal was filed with the Appellate Division, which affirmed the opinion of the trial court. On March 28, 1983, the Mercados' petition for certification was denied by the Supreme Court.
On June 24, 1983, the Mercados filed a Notice of Tort Claim alleging "... the negligent actions of the State of New Jersey in the placement, continued placement and manner of placement of these two children in a foster home."
This complaint was then filed alleging as follows:
17. As a direct and proximate result of the conduct of the defendants as described herein, the plaintiffs suffered severe emotional stress, distress, anxiety and embarrassment.

*491 18. As a direct and proximate result of the negligent conduct of the defendants as described herein, the plaintiffs were permanently deprived of their children and denied their natural and inalienable right to parentage.
After the filing of the complaint the State answered and then filed a Motion for Summary Judgment. Defendants alleged that the complaint should be dismissed for the following reasons: for failing to file their claim in a timely fashion in accordance with N.J.S.A. 59:8-8 and 9, and, for failing to state a cause of action upon which relief could be granted under the Tort Claims Act.
The first issue presented is whether plaintiffs have filed their notice of claim in a timely fashion. The Tort Claims Act requires claimants to file a notice of claim within 90 days of the accrual of the claim. See N.J.S.A. 59:8-8. If no claim is filed within the 90-day period, claimant may then move before the court to file a late notice of claim. See N.J.S.A. 59:8-9. The court then has discretion to allow claimant to file a late notice of claim. The court's discretionary powers in such instances are limited to a one-year period, which begins to run on the date the cause of action accrues. In addition, a claimant may not file any claims against a public entity "later than two years from the time of the accrual of the claim." Id.
Obviously, the operative date under the statute is the date of the "accrual of the claim." This date presents little, if any, difficulty in most cases since most claims against public entities are brought for accidents which result in physically observable injuries. As noted by the court in Fuller v. Rutgers, The State University, 154 N.J. Super. 420 (App.Div. 1977), "[A]ccrual as used in the statute is defined in accordance with existing law in the private sector and means the date on which the accident occurs and is not affected by the notice provisions of the statute, N.J.S.A. 59:8-1."
The present case presents a unique request in the application of this statute in that the court is not faced with an accident, per se, but rather a court order that terminated the parental rights of plaintiffs and granted guardianship to the foster *492 parents. The complaint alleges that the situation in the Mercado household would not have deteriorated to this point but for the negligence of the state agency, The Department of Youth and Family Services (D.Y.F.S.). Plaintiffs argue here that their cause of action against D.Y.F.S. accrued as of the date of the denial of certification by the Supreme Court on March 28, 1983.
In response to plaintiffs' argument, the State argues that the cause of action, if any, accrued upon entry of the order of the trial court which terminated the Mercados' parental rights (April 16, 1981) or, at the latest, upon the denial of a stay of the order of termination by that court (May 28, 1981) or the denial of a stay by the Appellate Division (August 20, 1981).
Plaintiffs uniquely respond that the March 28, 1983 date should prevail since it was not until that time that their loss became permanent. Until the Supreme Court denied their petition for certification, they argue, their loss was only temporary in nature. However, plaintiff cites no authority nor has the court found any authority to support this argument.
As the State orally argued at the motion, and this court so finds, all of the facts surrounding the alleged negligence of D.Y.F.S. were known to all of the parties as of April 16, 1981. If any claims were to arise out of the agency's actions, a notice of claim should have been filed within 90 days of that date. It also follows that any motion to file a notice of late claim should be measured from April 16, 1981. Having failed to meet either of the filing deadlines, plaintiffs' claim is considered untimely.
An appeal is an attempt to change a present factual determination of a court. In the instant case, there was nothing to prevent plaintiffs from filing both an appeal and the proper notice of a claim under the Tort Claims Act. Moreover, there is no provision in the act which permits such tolling of the notice provision, which is the request of plaintiffs in this action.
Nor does this court find this case to present a "Lopez type" situation. In Lopez v. Swyer, 62 N.J. 267, 272 (1973), the *493 New Jersey Supreme Court adopted the "discovery" rule, which "provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim." Since its adoption, the rule has been extended to Tort Claims cases, see, e.g., Torres v. Jersey City Medical Center, 140 N.J. Super. 323 (Law Div. 1976), but this court finds that the present case is inappropriate for application of the discovery rule.
As to the second issue, this court finds that plaintiffs' claims are not within the contemplation of the act and are, therefore, noncompensable.
Although this argument had not been submitted to the court in the original briefs of either party, it was submitted in letter form and thoroughly argued by counsel at oral argument. The State relied upon Ayers v. Tp. of Jackson, 202 N.J. Super. 106 (1985) requesting the court to review the complaint "in accordance with Ayers as far as it is applicable to any monetary recovery sought by plaintiffs as a result of any mental distress or anxiety alleged to be suffered by them."
In Ayers, plaintiffs were 339 residents of the Legler area of Jackson Township. These plaintiffs filed suit alleging that the Township's negligent operation of its landfill caused them injury. The jury entered a judgment of $15,892,303.97, of which $2,084,392.00 was awarded "to compensate plaintiffs for their emotional distress upon learning that they had been ingesting contaminated water for six years." 202 N.J. Super. at 113. On appeal, the court reviewed plaintiffs' claims for emotional distress and found these claims to be identical to claims for pain and suffering and, therefore, nonrecoverable under N.J.S.A. 59:9-2(d).
Similarly, plaintiffs in this case have sued the State for the negligence of D.Y.F.S. and have alleged as injuries severe emotional stress, distress, anxiety and embarrassment. Thus, *494 this court is faced with the same type of claims as the Ayers court and, like that court, finds no basis for recovery for these alleged injuries under the Tort Claims Act. See also, Portee v. Jaffee, 84 N.J. 88 (1980).
There were also arguments of collateral estoppel presented during argument and in the briefs but, because of the court's findings on the other issues presented, there is no need to decide that issue.
An appropriate form of judgment will be submitted.