245 N.J. Super. 344 (1991)
585 A.2d 950
MARSHA SREBNIK, AS ADMINISTRATRIX OF THE ESTATE OF HAROLD SREBNIK, DECEASED, AND MARSHA SREBNIK, INDIVIDUALLY, PLAINTIFF-APPELLANT/CROSS-RESPONDENT,
v.
THE STATE OF NEW JERSEY AND THE NEW JERSEY HIGHWAY AUTHORITY, DEFENDANTS-RESPONDENTS/CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1990.
Decided January 14, 1991.
*345 Before Judges SHEBELL, HAVEY and SKILLMAN.
*346 Russell G. Cheek argued the cause for appellant/cross-respondent (Russell G. Cheek on the brief).
Joseph De Donato argued the cause for respondents/cross-appellants (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Joseph De Donato on the brief).
Michael J. Cernigliaro argued the cause for respondent Estate of Harold Srebnik (Campbell, Foley, Lee, Murphy & Cernigliaro, attorneys; Mark J. Kerrigan on the brief).
The opinion of the Court was delivered by HAVEY, J.A.D.
Plaintiff Marsha Srebnik, individually and as administratrix of the Estate of Harold Srebnik, her late husband, appeals from a judgment entered on a jury verdict of no cause for action in favor of defendants State of New Jersey and the New Jersey Highway Authority. On appeal, plaintiff contends that the trial judge erred in concluding that her claim for "permanent" emotional distress was barred by the Tort Claims Act, N.J.S.A. 59:9-2d. She argues that "permanent" emotional distress constitutes a "permanent loss of a bodily function" and therefore is not subject to the statutory bar. She also asserts that the jury's verdicts on the issue of negligence were inconsistent, and therefore must be set aside. Defendants in their cross-appeal argue that the trial judge erred in failing to dismiss plaintiff's claim for emotional distress under Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980) and in admitting evidence of plaintiff's emotional distress.[1] We affirm.
While returning to their Westbury, New York home from Atlantic City at approximately 11:00 p.m., plaintiff and her late husband Harold Srebnik were involved in a one-car accident on the Garden State Parkway. The vehicle operated by Mr. Srebnik veered off the parkway near mile post 103, hit a guardrail, *347 flipped over and came to a halt in a ditch below the surface level of the roadway. A witness who saw the accident reported it to a toll-booth operator at the Asbury Park toll plaza, and a radio dispatcher transmitted the report to the state police. A search of the area that evening by a state trooper in the vicinity of mile post 103 was unavailing.
Plaintiff remained in the vehicle until daylight the next morning. While in the car she heard "moan[s] and groan[s]" from her husband. At dawn, plaintiff crawled out of the vehicle despite pain in her chest and swelling in one leg. After exiting the vehicle she observed her husband lying face down approximately 30 feet away. Upon observing him, plaintiff knew he was dead.
At 8:14 a.m. a state trooper, while on routine patrol, found plaintiff, her deceased husband and their disabled vehicle in the ditch. Plaintiff was taken to the Jersey Shore Medical Center where she remained for three weeks. She was treated for various injuries, including a collapsed lung.
The gravamen of plaintiff's complaint is that defendants failed to respond reasonably and promptly to reports of the accident and to make a thorough search of the accident scene. She claims that as a result of defendants' failure to "provide immediate and/or timely assistance" Mr. Srebnik's chance of survival was lost, and she was caused to suffer "permanent ... emotional and psychological" pain.[2]
Plaintiff testified that while hospitalized she consulted by phone with a psychotherapist on approximately 20 occasions. Upon her release she underwent psychotherapy twice a week because of recurrent fear of dying, frequent nightmares, loneliness and depression. She continued the therapy for over three *348 years. She described her emotional distress during this period as follows:
Well, I had some old stuff that came back; fear of dying was probably my biggest problem. Fear of death, waking up during the night with as I was having like a heart attack feeling, anxiety during the night. A lot of guilt about my having survived, my husband having died, not being at the funeral. Wasn't sure about you know, I hope they have the right body in the casket.... I had a recurrent nightmares in one form or another of the accident. My whole life was upside down. I was worried about the future, worried about how I'm going to manage.... I was apprehensive about running [the family coffee shop] by myself because I knew how strong my husband was in the business. I just really was helping him. A total disruption of my family life. I now became a lonely abandoned person although my children were wonderful.
Plaintiff's expert, Dr. Steven Stein, a psychologist, testified that plaintiff was "quite depressed," suffered flashbacks of the accident, night terrors and a sense of panic, all consistent with a post-traumatic stress disorder. According to Stein, plaintiff had developed a "workaholic pattern," focusing her life totally on her work without any socialization. It was Stein's view that plaintiff suffered from depression as well as a "pattern of perceptual withdrawal," an inability to see the surrounding environment accurately. She also suffered from confusion, anxiety and a sense of hopelessness. He diagnosed plaintiff as suffering from chronic post-traumatic stress disorder, a condition he concluded was "permanent" in nature.
At the close of plaintiff's case, the trial judge dismissed plaintiff's claim for emotional distress suffered as a direct consequence of defendants' conduct, reasoning that since it constituted "pain and suffering," see Ayers v. Township of Jackson, 106 N.J. 557, 576, 525 A.2d 287 (1987), it was barred by the Tort Claims Act, N.J.S.A. 59:9-2d. However, the trial judge declined to dismiss plaintiff's emotional distress claim under Portee; that is, distress resulting from the perception of her husband's death. See 84 N.J. at 100-101, 417 A.2d 521. He reasoned that the Legislature did not intend to insulate the municipal entities from Portee claims in view of the policy considerations attending the "marital or intimate familia[l] relationship between plaintiff and the injured person." In response *349 to special interrogatories, the jury found that defendants were not negligent as to the wrongful death of Harold Srebnik, but were negligent as to plaintiff's Portee claim. However, the jury apportioned liability with respect to that claim as follows: the Estate of Harold Srebnik 61 percent; the State 13 percent, and the Highway Authority 26 percent. Since the comparative negligence of the estate exceeded 50 percent, the trial judge entered a verdict of no cause for action in defendants' favor on the Portee claim. See id. 84 N.J. at 101-102, 417 A.2d 521.
We agree with the trial judge that N.J.S.A. 59:9-2d, as interpreted by Ayers v. Township of Jackson, supra, 106 N.J. 557, 525 A.2d 287, compels rejection of plaintiff's direct emotional distress claim. N.J.S.A. 59:9-2d provides in pertinent part as follows:
No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00.
In Ayers, the Supreme Court concluded that tortiously inflicted emotional distress is as much an "injury" under the statute as "a broken limb[.]" 106 N.J. at 577, 525 A.2d 287. However, the court concluded that the "subjective symptoms of depression, stress, health concerns, and anxiety" described by the plaintiffs, who had been exposed to carcinogens in their well water, constituted "pain and suffering resulting from any injury" and therefore was subject to the bar of N.J.S.A. 59:9-2d. 106 N.J. at 576, 525 A.2d 287. In so holding, Ayers cited the legislative policy that:
in view of the economic burdens presently facing public entities a claimant should not be reimbursed for non-objective types of damages, such as pain and suffering, except in aggravated circumstances.
Comment, N.J.S.A. 59:9-2 (emphasis added).
In light of the Ayers holding that emotional distress constitutes "pain and suffering," plaintiff's claim here is barred unless she suffered "permanent loss of a bodily function, *350 permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00."[3] In this regard, it is not disputed that plaintiff's physical injuries resulted from the initial accident, the cause of which was not attributable to either defendant. Therefore, any physical injury caused by the accident, resulting in "permanent loss of a bodily function," is of no consequence in resolving whether plaintiff's emotional distress claim is barred. Plaintiff nevertheless argues that her depression and stress disorder, independent of physical injuries, constitute a "permanent loss of a bodily function" because the condition has "permanently" prevented her from carrying out her ordinary day-to-day functions.
Neither the Act nor Ayers equates "permanent" emotional injury with "permanent loss of a bodily function." As we read Ayers, it interprets the Act as barring claims involving intangible "subjective symptoms" associated with personal injuries, irrespective of the severity or duration of the symptoms, absent the aggravating circumstances enumerated in the Act. Indeed, some of the Ayers plaintiffs tested by their clinical psychologist manifested "abnormally high levels" of stress, depression, health concerns and psychological problems. 106 N.J. at 573, 525 A.2d 287. Therefore, under the Ayers rationale, symptoms of depression and stress are "subjective" and "non-objective types of damages," whether temporary or permanent in nature. See also Marion v. Borough of Manasquan, 231 N.J. Super. 320, 331-332, 555 A.2d 699 (App.Div. 1989); Mercado v. State, 212 N.J. Super. 487, 493-494, 515 A.2d 804 (Law Div. 1985); Acevedo v. County of Essex, 207 N.J. Super. 579, 587-588, 504 A.2d 813 (Law Div. 1985); LaBarrie v. Housing Auth. of City of Jersey City, 143 N.J. Super. 61, 64, 362 A.2d 624 (Law Div. 1976).
*351 Moreover, the term "permanent loss of a bodily function" must be read in conjunction with its associated words "permanent disfigurement or dismemberment." See Germann v. Matriss, 55 N.J. 193, 220-221, 260 A.2d 825 (1970). These later words unquestionably pertain to injury to the physical components of the body, not the injured party's psyche. We must therefore assume that the Legislature intended the same meaning when it used "permanent loss of a bodily function." Moreover, while "injury" is defined by the Act, see N.J.S.A. 59:1-3, the terms "bodily," "bodily injury," or "bodily function" are not. Consequently, we give the terms their ordinary and well understood meaning. See Mortimer v. Board of Review, 99 N.J. 393, 398, 493 A.2d 1 (1985); State v. Walker, 216 N.J. Super. 39, 42, 522 A.2d 1021 (App.Div.), certif. denied 108 N.J. 179, 528 A.2d 10 (1987). "Bodily" is defined as "[p]ertaining to or concerning the body; of or belonging to the body or the physical constitution; not mental but corporeal." Black's Law Dictionary 159 (5th ed. 1979). "Bodily condition" is defined as the "[s]tatus of human body at a given point in time as contrasted with state of mind." Ibid.
We are satisfied that damages for emotional distress are recoverable, not only if they result from a permanent debilitating or disfiguring physical injury, but also if they result in permanent physical sequelae such as disabling tremors, paralysis or loss of eyesight; that is, a "permanent loss of a bodily function." Damages resulting from subjective symptoms of depression and anxiety, without the requisite indicia of permanent physical infirmity, are not recoverable under the Act. In our view, this reading is consistent with the Act's underlying policy of precluding recovery for "non-objective types of damages" except for aggravated circumstances.
Here, although we by no means intend to minimize the emotional trauma suffered by plaintiff as a result of this tragic episode, we agree with the trial judge that plaintiff did not suffer a "permanent loss of a bodily function." Her depression *352 and stress did not result from a physical injury, the cause of which is attributable to defendant public entities. Her distress has not resulted in any physically disabling infirmity. Approximately four months after the accident she was able to resume full time her work at the family coffee shop, and after approximately one year she resumed an active social life. In short, the residua of the unfortunate emotional trauma constitute the intangible subjective symptoms of depression, stress and anxiety barred by N.J.S.A. 59:9-2d.
Plaintiff also argues that her new trial motion should have been granted because the jury verdicts as to the question of negligence were inconsistent. As stated, with respect to plaintiff's wrongful death claim, the jury found that defendants were not negligent. However, as to plaintiff's Portee claim, the jury found defendants collectively 39 percent negligent. Plaintiff urges that since the theory of negligence against defendants on both the wrongful death and emotional distress claims was identical, the negligence verdicts are inconsistent. We disagree.
Preliminarily, we are of the view that the Portee claim never should have been presented to the jury. In applying the Tort Claims Act, we perceive no difference between a direct claim for an emotional injury and a derivative claim for emotional distress under Portee. Indeed the underlying policy of barring "non-objective types of damages" applies to both direct and derivative claims. We recognize the policy considerations implicated in Portee which allow recovery for the emotional trauma resulting from the "apprehension of the death or serious injury of one whose very existence is a precious treasure." Portee v. Jaffee, supra, 84 N.J. at 97, 417 A.2d 521. However, Portee was not decided in the context of the Act. As stated, N.J.S.A. 59:9-2d bars any claim for emotional distress (pain and suffering) short of the aggravating circumstances set forth in the statute. It does not expressly or impliedly exempt *353 Portee claims, notwithstanding the laudable policy underpinnings of the Portee decision.
We must also be mindful that the intent of the Act was to reestablish the immunity of all public entities except in the circumstances enumerated in the Act. See Birchwood Lakes Colony Club v. Borough of Medford Lakes, 90 N.J. 582, 596, 449 A.2d 472 (1982). The comment to N.J.S.A. 59:2-1 cautions us that:
the approach should be whether an immunity applies and if not, should liability attach. It is hoped that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities.
(Emphasis in original); see also Ayers v. Township of Jackson, supra, 106 N.J. at 574, 525 A.2d 287. Hence, without specific legislative authority, we are not empowered to carve an exception to the statutory bar to allow for emotional distress claims under Portee. The trial judge therefore erred in not dismissing the claim. However, since it was not dismissed, we must consider plaintiff's argument respecting the purported inconsistencies in the verdicts, to the extent that the "inconsistencies" may have tainted the wrongful death verdict.
We find no inconsistency. The jury was faced with two independent claims; the wrongful death of Mr. Srebnik and plaintiff's Portee claim. On the evidence, the jury could have found that the accident was caused solely by Mr. Srebnik's own negligence. The jury also received testimony from defendants' medical expert, Dr. Hillel Ben-Asher, that Mr. Srebnik died four minutes after the accident. The jury therefore had a factual basis to conclude that Mr. Srebnik died before the state police could have reasonably responded to the report of the accident. Thus, any subsequent delay in reporting and investigating the accident may well have been deemed irrelevant by the jury in its determination as to whether defendants were negligent vis-a-vis the wrongful death claim.
On the other hand, plaintiff's Portee claim was predicated on the extended and unreasonable delay before the state police *354 located her and rendered assistance, and the intervening and subsequent emotional distress she suffered caused by her perception of her dying husband. The jury had a basis to conclude that defendants were negligent in the manner by which they failed to report and investigate the accident, and that the consequential inordinate delay was a proximate cause of plaintiff's emotional distress. In the circumstances we find no inconsistency in the verdicts.
Affirmed.
NOTES
[1] Defendants' contentions are advanced for consideration by us only if we reverse on plaintiff's appeal.
[2] We are advised that plaintiff, who lived in New York with her husband at the time of the accident, did not file a direct claim against her husband's estate because such claim is not covered under New York insurance law.
[3] Defendants concede that the cost of plaintiff's psychotherapy exceeded $1,000.