264 N.J. Super. 565 (1992)
625 A.2d 41
A.C.R., AN INFANT BY HER GUARDIANS AD LITEM, L.R. AND D.R.; AND L.R. AND D.R., PLAINTIFFS,
v.
CHARLES VARA, RICHARD ALBANESE, ROBERT POLISSE, BOARD OF EDUCATION OF LODI, AND ROSE DIBIASIO, DEFENDANTS. J.N., AN INFANT BY HER GUARDIANS AD LITEM, A.N. AND L.N.; E.Y., AN INFANT BY HER GUARDIANS AD LITEM, B.Y. AND R.Y.; L.N. AND A.N., INDIVIDUALLY; AND R.Y. AND B.Y., INDIVIDUALLY, PLAINTIFFS,
v.
CHARLES VARA, RICHARD ALBANESE, LINDA MASULLO, ROBERT POLISSE, BOARD OF EDUCATION OF LODI, AND ROSE DIBIASIO, DEFENDANTS. M.R., AN INFANT BY HER GUARDIAN AD LITEM, C.B., AND C.B., INDIVIDUALLY, PLAINTIFFS,
v.
CHARLES VARA, RICHARD ALBANESE, LINDA MASULLO, ROBERT POLISSE, BOARD OF EDUCATION OF LODI, AND ROSE DIBIASIO, DEFENDANTS. V.G., AN INFANT BY HER GUARDIANS AD LITEM, J.G. AND A.G.; AND J.G. AND A.G., PLAINTIFFS,
v.
CHARLES VARA, RICHARD ALBANESE, ROBERT POLISSE, BOARD OF EDUCATION OF LODI AND ROSE DIBIASIO, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided September 23, 1992.
*566 William N. Dimin for plaintiffs, A.R., et al. (Spector & Dimin, attorneys).
John J. Feczko for plaintiffs, J.N., et al. (Romano & Feczko, attorneys).
Jean W. Billings for plaintiffs, M.R., et al. (Rubenstein, Rudolph, Meyerson and Billings, attorneys).
Robert J. Hitscherich for plaintiffs, V.G., et al. (Zisa & Hitscherich, attorneys).
Diane J. Cahn for defendant, Richard Albanese (Ryan and Gannon, attorneys).
Barbara Weisman for defendant, Robert Polisse (DeGonge Chappel, attorneys).
Claude T. Minter for defendant, Lodi Board of Education (Stevens & Minter, attorneys).
David W. Gallagher for defendant, Linda Masullo (Garrity, Fitzpatrick, Graham, Hawkins & Favetta, attorneys).
Robert J. Kovacs for defendant, Rose DiBiasio (Ronca, McDonald & Hanley, attorneys).
MEEHAN, J.S.C.
This consolidated action was brought on behalf of the infant plaintiffs against the Lodi Board of Education, various teachers and school administrators. Plaintiffs, who were sexually assaulted by a teacher allege that these defendants breached their duty to exercise reasonable supervisory care for their safety. As a result of this breach of duty, plaintiffs allege that they sustained serious *567 and permanent injuries both physical and psychological. The matter currently before the court is defendants' motion for partial summary judgment on the grounds that under N.J.S.A. 59:9-2(d) plaintiffs' claims are not compensable under the New Jersey Tort Claims Act.
According to the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., the Legislature declared:
It is ... the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein.
The limitations on recovery against a public entity are set forth in N.J.S.A. 59:9-2(d) which provides:
No damages shall be awarded against a public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.
The infant plaintiffs in this case have undergone psychiatric evaluations which conclude that each child is suffering from post traumatic stress disorder. This medically diagnosed disorder is characterized by both physical and psychological symptomatologies.[1]
Defendants argue that these injuries should be characterized as "pain and suffering" under the Tort Claims Act whereby they are not compensable. In support of this argument, defendants rely on Srebnik v. State, 245 N.J. Super. 344, 585 A.2d 950 (App.Div. 1991).
In Srebnik, the plaintiff brought a Portee claim (see Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980)) against the State of New Jersey and the State Highway Authority for damages she sustained while witnessing her husband's death. The couple had been traveling on the Garden State Parkway when they suddenly hit a guardrail, flipped over and landed in a ditch below the roadway. Mrs. Srebnik sued defendants for their failure to *568 respond to the accident in a reasonable and prompt fashion and for failure to adequately inspect the scene of the accident. Plaintiff alleged that it was this lack of assistance that caused her husband to lose his chance for survival which resulted in her permanent emotional and psychological pain. Id. at 347, 585 A.2d 950.
The Appellate Division in Srebnik held that the depression and anxiety suffered by the plaintiff after witnessing her husband's death was "emotional distress" that is not compensable under the Tort Claims Act. The Srebnik Court relied heavily on Ayers v. Township of Jackson, 106 N.J. 557, 525 A.2d 287 (1987) and reasoned:
Neither the Act nor Ayers equates "permanent" emotional injury with "permanent loss of a bodily function." As we read Ayers, it interprets the Act as barring claims involving intangible "subjective symptoms" associated with personal injuries, irrespective of the severity or duration of the symptoms, absent the aggravating circumstances enumerated in the Act. Id. at 350, 585 A.2d 950.
In Ayers v. Township of Jackson, 106 N.J. 557, 525 A.2d 287 (1987) the residents of a municipality sued the town for damages sustained when their well water was contaminated by toxic pollutants. The Supreme Court affirmed the verdict of the jury which found the township had operated the landfill in a palpably unreasonable manner that led to the contamination of the underground wells. Id. at 567, 525 A.2d 287. Upon review of the damage award, the Court reversed the plaintiffs damages for "emotional distress" and affirmed damages for the loss of "quality of life". Id. at 557 and 572, 525 A.2d 287.
In the matter at hand, defendants cite Ayers to buttress their argument that claims for emotional distress are not compensable under the Tort Claims Act. Plaintiffs, on the other hand, analogize the quality of life damages in Ayers to those suffered by the children in this case.
The Ayers Court drew a fine line distinction between the different type of damages involved. The plaintiffs claim for emotional distress was characterized as the subjective emotional reactions to the contamination and for fears of health problems for *569 themselves and their family members. Quality of life damages, on the other hand, were characterized as objective damages "for inconveniences, aggravation and unnecessary expenditure of time and effort related to the use of the water ... as well as to other disruptions in their lives, including disharmony in the family unit." Id. at 570, 525 A.2d 287.
This court finds that Ayers is not applicable to the case at bar. To begin, the plaintiffs in Ayers were never physically violated in any way. There was no tort or assault perpetrated upon any of the plaintiffs. The Ayers case was based in nuisance which is derived from the laws of property. Second, the Ayers Court was faced with applying the different types of damages available under the Torts Claims Act. It did not specifically interpret the different types of physical injuries that are compensable under the Act.
The Srebnik case, supra, is not on point with the facts of this case. In this matter the court has dismissed those claims that are factually similar to Srebnik, that is, the claims of the parents for emotional distress from observing the suffering of their children arising from the child's injury. In both Srebnik and Ayers the claims being made were by a party who did not sustain the injury upon which their claim was brought. In Ayers it was the contamination of the water, and in Srebnik it was the injury to her husband. In this matter the infant plaintiffs have been the victims of sexual assault. They sustained an assault to their body and person. The emotional distress for which they seek damages flow from the injury and assault they sustained. Srebnik was an attempt to expand Portee v. Jaffe, supra, wherein one who is not injured is compensated for the emotional distress that a witness may suffer under such circumstances. The facts in this case are not those that would constitute a claim based upon the holding in Portee, supra.
The troubling issue facing this court is whether the sexual molestation of a child should be classified as a physical injury within the meaning of N.J.S.A. 59:9-2(d). The court accepts, for the purpose of this motion, that these children have sustained a *570 medically recognized emotional injury.[2] The question is whether this injury should qualify as permanent physical injury. While there is no case in New Jersey directly on point, Atlantic Employers Insurance Co. v. Tots and Toddlers Pre-School Day Care Center, 239 N.J. Super. 276, 571 A.2d 300 (App.Div. 1990) certif. den., 122 N.J. 147, 584 A.2d 218 (1990) offers some guidance.
In Tots and Toddlers, the issue before the Appellate Court was whether the defendant who was charged with sexually molesting several children in his care had intended to injure the victims thereby excluding such conduct from insurance coverage. The court held that intent to cause injury can be inferred when one commits an act of sexual abuse. Id. at 282-83, 571 A.2d 300. Specifically, the court reasoned:
... we conclude that the better rule warrants an application of the objective approach. A subjective test suggests that it is possible to molest a child and not cause some kind of injury, an unacceptable conclusion. Certainly, one would and should expect some physical or psychological injury or both, to result from such acts. Id. at 283, 571 A.2d 300.
The Appellate Court in Tots and Toddlers looked to several jurisdictions for guidance. In Vermont Mutual Insurance Co. v. Malcolm, 128 N.H. 521, 517 A.2d 800 (1986), the issue was whether the young boy's injuries could be classified as "accidental" for purposes of insurance coverage. The Court found that:
the nature of a sexual assault is inherently injurious and can not be treated as an accidental cause of injury under the insurance policy. Id., 517 A.2d at 802-03.
Since its publication, the Tots and Toddlers decision has been cited with approval in Scudder v. Hanover Insurance Co., 201 Ill. App.3d 921, 147 Ill.Dec. 386, 559 N.E.2d 559 (1990). As the case was one of first impression, the Scudder Court looked to several jurisdictions and found there is a recognized inference of *571 intentional injury made in coverage cases dealing with child molestation. The Scudder Court noted that:
Courts which have recognized such an inference have done so in large part because of the inevitability of injury in sexual abuse cases, especially when the victims are minors. Id., 147 Ill.Dec. at 390, 559 N.E.2d at 563.
The Scudder Court went on to reason:
In our view, these cases properly recognize the inevitability of emotional harm to minors from sexual abuse in all forms even if the abuse was not accomplished through violence or threats of violence. Id., 147 Ill.Dec. at 390, 559 N.E.2d at 563.
The court in Allstate Insurance Co. v. Kim W., 206 Cal. Rptr. 609, 613, 160 Cal. App.3d 326 (1 Dist. 1984), was confronted with a similar coverage issue. In finding molestation to be a willful act that causes injury to a child, the court stated:
Implicit in the determination that children must be protected from such acts is a determination that at least some harm is inherent in and inevitably results from those acts. As the court stated in (citation omitted) "Significant harm may occur to a child who is caused to engage in or submit to the lustful intendments of a person seeking sexual self-gratification. The range of proscribed potentially harmful acts is limited only by the imagination of the perpetrator. The harm may be manifest in many different mental, emotional and physical ways, leaving a child with possible lasting and debilitating fears." Id., 206 Cal. Rptr. at 613. (emphasis added)
Although this court has found no cases directly on point, it finds insight and instruction from the language in Tots and Toddlers and from like decisions in other jurisdictions involving the sexual abuse of children.[3] This court finds there is a presumption that the sexual molestation of a child results in serious physical as well as mental injury.[4]
From this presumption, it is fair to conclude that the requirements of N.J.S.A. 59:9-2(d) have been met as there is permanent *572 loss of a bodily function and or permanent disfigurement when a child is sexually molested. This is true even when the injury only manifests itself in psychological symptoms. This presumption may be rebutted at trial, see McGlynn v. Newark Parking Authority, 86 N.J. 551, 432 A.2d 99 (1981); and Evid.R. 13 and 14.
Thus, the defendants motion for partial summary judgment is hereby denied as a matter of law pursuant to R. 4:46-2.
NOTES
[1] Since the molestation, plaintiffs have complained of numerous physical ailments including, but not limited to, stomach pains, vomiting, recurring vaginitis, constipation, dizziness, nightmares, bed wetting, and insomnia.
[2] Counsel has submitted the psychiatric reports of the plaintiffs as prepared by their damages expert. The doctor followed the American Psychiatric Association's Diagnostic and Statistical Manual  DSM III-R and concluded that the children are suffering from post-traumatic stress disorder. He also states that they have an increased risk of developing severe psychopathology in the future.
[3] See also, Fireman's Fund Insurance Co. v. Hill, 314 N.W.2d 834 (Minn. 1982); Linebaugh v. Berdish, 144 Mich. App. 750, 376 N.W.2d 400 (1985); Illinois Farmers Insurance Co. v. Judith G., 379 N.W.2d 638 (Minn.App. 1986); Horace Mann Insurance Co. v. Leeber, 180 W. Va. 375, 376 S.E.2d 581 (1988); West American Insurance Co. v. Vago, 197 Ill. App.3d 131, 143 Ill.Dec. 195, 553 N.E.2d 1181 (1990).
[4] This court notes that it may be possible to rebut this presumption under certain extraordinary facts and circumstances.