PATRICIA ROSSI & another vs. ERNEST V. DELDUCA.

Essex.   February 6, 1962. — April 4, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Dog.   Trespass.   Damages,* Consequential.

An eight year old girl, plaintiff in an action, who was injured one afternoon
in a field located in the rear of the defendant's house and in his posses-
sion by two great Dane dogs owned by him, was not "committing a
trespass" by being in the field within the meaning of that phrase in
G. L. c. 140, § 155, as amended by St. 1934, c. 320, § 18, and was not
barred from recovering for her injuries from the defendant, where it
appeared that the girl had been walking on a street to her home when
she was frightened by another dog coming toward her and between her
and her home, that she then ran down a dead-end side street and thence
into the field in order to get home, followed all the while by the dog which
had frightened her, and that she was jumped upon in the field by the
defendant's dogs.   [68–70]
A parent of a minor child who is injured by a dog may recover conse-
quential damages incurred by him by reason of such injuries from the
owner or keeper of the dog under G. L. c. 140, § 155, as amended.
[70–71]

TORT.   Writ in the Superior Court dated September 25,
1957.

The action was tried before *Forte, J.*

*John Z. Doherty,* (*John J. Griffin* with him,) for the
defendant.

*Max Nicholson,* (*Max C. Goldberg* with him,) for the
plaintiffs.

SPALDING, J.   Although the declaration contains thirteen
counts against several defendants, we are now concerned
with only the first and seventh.   The plaintiff in the first
count (hereinafter called the plaintiff) is Patricia Rossi, a
minor, who seeks by her next friend to recover for in-
juries inflicted upon her by two dogs owned by the defend-
ant, Ernest V. DelDuca.   In the seventh count John Rossi,
Patricia's father, seeks to recover for medical expenses
incurred by him on behalf of his daughter.   Both counts

Rossi *v.* DelDuca.

were submitted to the jury who returned verdicts for the plaintiffs. The case comes here on the defendant's exception to the denial of his motion for a directed verdict on each count.

There was evidence of the following: The plaintiff lived with her parents on Oak Street, Methuen. Oak Street runs north and south. In order to reach the Rossi house coming from the south it is necessary to pass Cambridge Street which joins Oak Street from the east. On the east side of Oak Street starting at the junction of Cambridge and Oak streets and proceeding northward there are three houses occupied by the defendant and members of his family. The first house (No. 105) is owned and occupied by Arthur DelDuca, a brother of the defendant. To the north of, and next to, Arthur's house is a house (No. 119) owned and occupied by Samuel DelDuca, also a brother of the defendant. Next to and north of Samuel's house is the defendant's house (No. 121). At 70 Cambridge Street (on the north side of the street) is a garage owned by the defendant's wife, which the defendant uses in his contracting business. There is a small shed near the back of the garage, slightly to the west, which is also used in the business. Cambridge Street is a dead-end street to the east of the garage, and there are no streets running off Oak Street north of Cambridge Street. In connection with his business, the defendant owned and maintained bulldozers, graders, and equipment which he kept outdoors on a field owned by his father, Vincenzo, located east of 105, 119, and 121 Oak Street, and north of the garage at 70 Cambridge Street. "Going north on the east side of Oak Street starting at Cambridge Street there were no fences between the houses. The field on the east side of Oak Street was to the north of 70 Cambridge Street and east of . . . [the defendant's] land at 121 Oak Street. The land was all open in there." On this field, the defendant, with the permission of his father, had erected a pen to house two great Dane dogs which he owned. The defendant's brother Arthur was the owner of a purplish-gray German Weimaraner dog.

In September, 1955, Ida Celia and the plaintiff, both aged eight, were students in the third grade of the Ashford school. In the afternoon of September 26, school having closed, they started walking up Oak Street toward their homes. As they reached the corner of Cambridge Street, they saw the German Weimaraner ahead of them on Oak Street. The dog started to come toward them, and, as the plaintiff testified, "We got frightened so we . . . ran down Cambridge Street . . . [and the dog was] [f]ollowing us." Realizing that Cambridge Street was a dead-end street, the girls left Cambridge Street on the north side, passing around the garage at 70 Cambridge Street and the shed. The dog continued to follow them. After they passed the shed, they ran along a path in the field belonging to the defendant's father. The plaintiff then saw, for the first time, a black great Dane. "[T]he dog was on its hind legs and it was going to jump on her. It did jump on her. She doesn't remember after that, and then she remembers two black dogs on her. She didn't feel anything but they were biting her neck. She shouted for help." The plaintiff's father observed the defendant's great Dane dogs in the field. They "were worrying some object" which he learned was his daughter Patricia who was "crouched down on her knees . . . with her hands on her face." He picked her up and took her to the hospital.

The defendant testified that on September 26, 1955, he owned two "black Dane dogs." The dogs were "trained to stay in the field to the rear of this defendant's home where his equipment was kept. . . . He had a lot of equipment and was concerned about it." The defendant's arrangement with his father regarding this land was that the "defendant could use all of that property for parking his equipment and doing anything he wanted with it in connection with his business. . . . He had full control of the field."

1. It is clear both from the pleadings and the evidence that the plaintiff seeks to recover under G. L. c. 140, § 155, which, as amended by St. 1934, c. 320, § 18 reads: "If any

Rossi *v.* DelDuca.

dog shall do any damage to either the body or property of any person, the owner or keeper, or if the owner or keeper be a minor, the parent or guardian of such minor, shall be liable for such damage, unless such damage shall have been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog.'' Under this statute, unlike the common law, ''the owner or keeper of a dog is liable . . . for injury resulting from an act of the dog without proof . . . that its owner or keeper was negligent or otherwise at fault, or knew, or had reason to know, that the dog had any extraordinary, dangerous propensity, and even without proof that the dog in fact had any such propensity.'' *Leone* v. *Falco,* 292 Mass. 299, 300. It is to be noted that the strict liability imposed by the statute is of no avail to a plaintiff if at the time of his injury he ''was committing a trespass or other tort, or was teasing, tormenting or abusing the dog.'' And it is incumbent upon a plaintiff to plead and prove that he has done none of these things. *Sullivan* v. *Ward,* 304 Mass. 614.

The defendant contends that the plaintiff is barred from recovery because on her own testimony — and there is no evidence more favorable to her — she was committing a trespass at the time the defendant's dogs attacked her. We assume that, although the field where the plaintiff was attacked was owned by the defendant's father, the defendant had possessive rights in the property sufficient to render the principle enunciated in *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340, inapplicable.[1] See *Moore* v. *Worcester Insulation Co. Inc.* 338 Mass. 44. We are of opinion, nevertheless, that the jury could have found that the plaintiff was not a trespasser, as that word is used in the statute. A finding was warranted that the plaintiff, an eight year old girl, was frightened by the German Weimaraner dog which was between her and the only means of access to her house; that she turned and ran down a side

---

[1] The *Sarna* case held that where A was injured by the negligence of B on land of C, B, having no property in the land, could not defend on the ground that A was a licensee of C.

street; and that because this was a dead-end street she went north across the field in the rear of the defendant's house in order to get home, the Weimaraner following her all the while. This evidence brings the case, we think, within the principle that one is privileged to enter land in the possession of another if it is, or reasonably appears to be, necessary to prevent serious harm to the actor or his property. Restatement 2d: Torts, Tent. draft no. 2, 1958, § 197. This privilege not only relieves the intruder from liability for technical trespass (*Carter* v. *Thurston,* 58 N. H. 104; *Ploof* v. *Putnam,* 81 Vt. 471; *Boutwell* v. *Champlain Realty Co.* 89 Vt. 80. See *Campbell* v. *Race,* 7 Cush. 408. Cf. *Vincent* v. *Lake Erie Transp. Co.* 109 Minn. 456, a case where actual harm resulted from the invasion) but it also destroys the possessor's immunity from liability in resisting the intrusion. *Ploof* v. *Putnam,* 81 Vt. 471. See Bohlen, Incomplete Privilege to Inflict Intentional Invasions of Interests of Property & Personality, 39 Harv. L. Rev. 307. "The important difference between the status of one who is a trespasser on land and one who is on the land pursuant to an incomplete privilege is that the latter is entitled to be on the land and therefore the possessor of the land is under a duty to permit him to come and remain there and hence is not privileged to resist." Restatement 2d: Torts, Tent. draft no. 2, 1958, § 197, comment k. We assume that the statute evidences a legislative recognition of the right of a possessor of land to keep a dog for protection against trespassers. Nevertheless, we do not believe that the Legislature intended to bar recovery in a case like the present.

2. In support of his motion for a directed verdict on count seven, the defendant contends that it is not possible to recover consequential damages under G. L. c. 140, § 155. He argues that the phrase "damage to either the body or property of any person" must be interpreted to mean damage which is the direct result of an injury, and cannot include consequential damage which was sustained by the plaintiff John Rossi. A full answer to this contention is found in *M'Carthy* v. *Guild,* 12 Met. 291 (construing a pred-

ecessor of the present statute, which, while different in some particulars, is essentially similar on the point in issue). There, in permitting recovery for consequential damage by the parent of a child bitten by a dog, it was said: "The object of the statute is to protect from injury by dogs. . . . But it is quite apparent that a remedy, confined to the case of an injury to the person, and to be enforced only by an action in the name of such person, would fall short of giving complete redress for injuries by dogs. . . . [The statute] provides an adequate remedy for the entire damages that may result from any such injur[ies]. The parent . . . will recover his appropriate damages, and the minor . . . will, in his own name, recover for the personal suffering." PP. 292–293. Compare *Wilson* v. *Grace,* 273 Mass. 146, 154–155; *Zarba* v. *Lane,* 322 Mass. 132, 135.

*Exceptions overruled.*