285 N.J. Super. 15 (1995)
666 A.2d 543
JOHN TRISUZZI AND ELAINE TRISUZZI, PLAINTIFFS-APPELLANTS,
v.
RITA TABATCHNIK AND BENJAMIN TABATCHNIK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1995.
Decided October 31, 1995.
*18 Before Judges DREIER, ARNOLD M. STEIN and KESTIN.
Jack Dashosh argued the cause for appellants (Mr. Dashosh on the brief).
*19 James F. Sullivan argued the cause for respondents (Sullivan and Graber, attorneys; Jennifer L. Remington on the brief).
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
This is a dog bite case. Plaintiff John Trisuzzi, who was bitten by the dog, appeals a verdict of no cause for action entered in favor of defendants, the dog owners, following the negative response by the jury to the first two special interrogatories. Plaintiff Elaine Trisuzzi, John's wife, appeals the trial judge's dismissal of her claim of negligent infliction of emotional distress.
We reverse as to plaintiff John Trisuzzi for retrial on liability under the dog bite statute, N.J.S.A. 4:19-16, because the trial judge did not inform the jury of the circumstances under which plaintiff could be considered lawfully upon defendants' property. We find no error in the judge's rulings and instructions as to common law negligence and affirm the verdict of no cause for action on that theory of the case. R. 2:11-3(e)(1)(E). We also affirm the dismissal of Elaine Trisuzzi's claim for negligent infliction of emotional distress resulting from the trauma of watching her husband being attacked by the dog.
On June 15, 1988, at approximately 7:30 p.m., John, Elaine and their nineteen-year-old daughter were taking their customary evening walk, which took them past defendants' house on Everdale Road in Randolph Township. Because the street had no sidewalks, they were walking in a sixteen to twenty-foot roadway.
Defendants owned a five-year-old, eighty-five pound German Shepherd. John testified that he saw defendants' dog come running towards his wife and daughter in what he described as an "attack mode." The dog had its ears back and its teeth bared and was coming at full speed. John immediately ran to place himself between the dog and his daughter. He claimed that he was practically touching his daughter when the dog first made contact with him.
*20 According to John, the dog came into the street and leaped upon him. John, trained in martial arts, lifted his leg to kick while the animal was mid-air. His leg hit the side of the dog and the dog went down to the ground. Immediately, the dog sprang on John, who again pushed the dog down. When the dog got up, it went for John's throat. John claimed that the animal was "like a mad dog" and had a menacing look in its eyes.
John continued to ward off the dog with punches and kicks until he lost his balance. When the dog then went for John's neck, he put his hands in the dog's mouth to keep the animal from his throat. John testified that the dog jumped on him about a dozen times, landing on and biting at his stomach, legs and groin. The dog also bit both of John's hands which were now bleeding "profusely." John testified that he believed that he was in a life-or-death situation and that he was protecting his family from the dog.
The dog then circled John. When the animal moved to the side, John tried to run but the dog put his head down and snarled at him. Just as John grabbed a small stick, the dog again jumped on him. He hit the dog with the stick until it ran back.
Defendant Rita Tabatchnik then appeared from the side of the house and tried to grab the dog. She was eventually able to restrain the animal. The entire incident lasted about two to three minutes, and according to plaintiff, it took place entirely in the public roadway. Plaintiff claimed that he never went onto defendants' property.
As John and his family walked back home, he took off his T-shirt and wrapped it around his bleeding hands. His wife and daughter were "hysterical" and his wife was "almost ... in shock." When they arrived home, John washed and disinfected his hands. He testified that he tried to downplay the incident so as not to alarm his family. We do not discuss the remainder of injuries claimed by plaintiff except as they are relevant to the disposition of Elaine's appeal.
*21 John's wife and daughter corroborated his version of the accident. His daughter testified that John never went onto defendants' property during the attack and that the closest he got to the property line was five feet. His wife also testified that the attack had occurred in the public roadway.
The next day, plaintiff described the incident to Randolph Township's animal warden, who issued a summons to Rita for harboring a vicious dog. That charge was eventually tried in the local municipal court and Rita was found guilty.
Plaintiffs' attorney read to the jury excerpts from Rita's testimony in the municipal court, where she defended the charge of violating the township's vicious dog ordinance. There she testified that her eyes were not on the dog when it first started to bark at plaintiff.
This account differed from both her deposition testimony, which was also read to the jury, and her direct trial testimony. On both occasions, Rita insisted that her eyes were on the dog the entire time and that she saw plaintiff make the first aggressive move towards the animal.
Rita testified at trial that the dog had been tied to a run behind the house for an hour before the incident. At about 7:00 p.m. she untied the dog and it followed her to the deck on the side of her house. While defendant was washing mud from a pair of her toddler's shoes, the dog went down the steps and urinated on a bush on the property, then moved to another bush approximately two feet closer to the road, where it again urinated. The second bush was about twelve to seventeen feet from Rita and eight to ten feet from the roadway.
According to Rita, the dog barked, then she heard John "roar" and saw him jump at the dog from the side of the road into her mulch bed immediately adjacent to the roadway. Rita claimed that John did a number of "judo kicks" on the dog's head, and a series of "hi ya" exclamations as he jumped into the mulch bed after the dog. Rita testified that John was about twenty feet *22 away from his wife and daughter when this encounter occurred. After John kicked the dog several times he picked up a branch from the mulch bed and began beating the dog. Rita insisted that the dog never bit or otherwise came into contact with plaintiff. She claimed that she called to the dog from a distance of about five feet, then grabbed it by the collar.
On cross-examination, defendant conceded that she watched the dog "off and on" after untying its leash. She admitted that she may have lost eye contact with the dog while she was washing her son's shoes. She insisted, however, that when she saw the dog heading for the roadway, it was walking slowly, not running. She was not concerned that the dog would run into the roadway because the dog had learned "his lesson" when hit by a car three years before.
Rita insisted on cross-examination that the dog stood on her property, approximately eight to ten feet from the road, only barking at plaintiff. She claimed that John beat the dog with a stick while it was trying to back up and that she grabbed the dog's collar while the animal was retreating. Although the dog may have been barking, she did not recall seeing its teeth bared or hearing it growl. She admitted that the dog moved around John several times in a semicircle.
The dog bite statute provides for absolute liability of a dog owner under certain circumstances:
The owner of any dog which shall bite a person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.
For the purpose of this section, a person is lawfully upon the private property of such owner when he is on the property in the performance of any duty imposed upon him by the laws of this state or the laws or postal regulations of the United States, or when he is on such property upon the invitation, express or implied, of the owner thereof.

[N.J.S.A. 4:19-16 (emphasis added).]
The three elements plaintiff must prove under this statute are that: (1) defendant is the owner of the dog; (2) the dog bit *23 plaintiff; and (3) the bite occurred while the plaintiff was either in a public place or lawfully in a private place. DeRobertis v. Randazzo, 94 N.J. 144, 153, 462 A.2d 1260 (1983). The statute allows recovery for all injuries sustained by the bite victim, even though some of the injuries may result from the dog attacking the victim in other ways. Gross v. Dunham, 91 N.J. Super. 519, 522, 221 A.2d 555 (App.Div. 1966).
The term "invitation" allows recovery for invitees and licensees but not trespassers. DeRobertis v. Randazzo, supra, 94 N.J. at 152, 462 A.2d 1260. An implied invitation creates a license affording the statute's protection to anyone whose presence is expressly or impliedly permitted on the land. Ibid. A plaintiff is entitled to prove that he or she had an express or implied invitation to be on the property and that he or she reasonably believed that the scope of the permission extended to the place of the incident. Id. at 153, 462 A.2d 1260.
The trial judge instructed the jury:
In deciding whether the plaintiff was on or in a public place or lawfully on or in a private place including the property of the defendants you should note that anyone whose presence is expressly or impliedly permitted on the property is entitled to the protection of the statute I have just read. The permission extends to all areas where the plaintiff may reasonably believe to be included within its scope.
The jury answered "no" to the following questions on the jury verdict sheet and concluded its deliberations:
1. Did the dog bite plaintiff in a public place or while plaintiff was lawfully on defendants' property?
2. Did the defendants act negligently in keeping the dog on June 15, 1988?
The charge was insufficient. The jury should have been instructed to consider the circumstances under which John could have been considered lawfully on defendants' property. The evidence presented a jury question as to whether John initially or eventually stepped onto defendants' property in an effort to protect himself and his family from his perceived threat from the dog. The jury should have been instructed that John had a right by implied invitation to be on defendants' property if he was there *24 to protect himself or his family members from serious physical harm.
(1) One is privileged to enter or remain on land in the possession of another if it is or reasonably appears to be necessary to prevent serious harm to
(a) the actor ... or
(b) ... a third person....
[Restatement of Torts 2d, § 197 (1965) (cited with approval in Demetro v. Penna. R.R., 90 N.J. Super. 308, 310, 217 A.2d 329 (App.Div. 1966)).]
This doctrine of private necessity is an extension of the rescue doctrine. Burns v. Market Transition Fac., 281 N.J. Super. 304, 310, 657 A.2d 472 (App.Div. 1995). As Justice Cardozo, then a judge of the New York Court of Appeals, said:
Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to its rescuer.
[Wagner v. International R. Co., 232 N.Y. 176, 133 N.E. 437, 437 (N.Y. 1921) (quoted in Burns, supra, 281 N.J. Super. at 310, 657 A.2d 472; and Cafone v. Spiniello Constr. Co., 42 N.J. Super. 590, 602-03, 127 A.2d 441 (App.Div. 1956), certif. denied, 23 N.J. 258, 128 A.2d 753 (1957).]
The private necessity doctrine was invoked in Rossi v. DelDuca, 344 Mass. 66, 181 N.E.2d 591 (1962). The victim had trespassed onto defendant's father's property in an effort to run away from a Weimaraner, who was chasing her. Id., 181 N.E.2d at 592. Defendant kept a Great Dane on the property which attacked and bit the victim. Ibid. The Massachusetts Supreme Court held that the technical trespass did not deprive the victim from recovering under the strict liability dog bite statute, which prohibited recovery by trespassers. Id. at 593-94. Plaintiff was privileged to enter upon the property of another if it was or reasonably appeared to be necessary to prevent serious injury to herself. Id. at 593.
The jury should have been allowed to determine whether John was acting pursuant to the privilege of private necessity if he entered upon defendants' land. Merely asking the jury to say whether plaintiff was bitten while lawfully on defendants' property was an inadequate instruction.
*25 The trial judge's instructions should "plainly spell out how the jury should apply the legal principles to the facts as it may find them...." Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-92, 222 A.2d 78 (1966). The judge should "mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case." State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988). The instruction did not inform the jury how defendants could be found liable even if all or part of John's encounter with the dog occurred on their property.
We reject plaintiffs' contention that Rita Tabatchnik's conviction for harboring a vicious dog in violation of a Randolph Township ordinance collaterally estops the Tabatchniks from arguing that John was not lawfully on their property when he was bitten by the dog. Rita was fined $50 for the violation and an order of viciousness was entered "against" the dog.
The municipal court conviction for the vicious dog violation was not admissible in the civil action. "In a civil proceeding ... evidence of a final judgment against a party adjudging him guilty of an indictable offense ... [is admissible] against that party, to prove any fact essential to sustain the judgment." N.J.R.E. 803(c)(22) (emphasis added); Eaton v. Eaton, 119 N.J. 628, 644, 575 A.2d 858 (1990) (record of conviction for a non-indictable offense is inadmissible in a civil action). Nor can the facts necessary to sustain the municipal court conviction for a non-indictable offense be used to estop defendant from retrying those facts in a civil action. Kohnherr v. Ferreira, 215 N.J. Super. 123, 128-30, 521 A.2d 377 (App.Div. 1987); Burd v. Vercruyssen, 142 N.J. Super. 344, 353, 361 A.2d 571 (App.Div.) ("municipal conviction is inadmissible to prove the facts underlying that conviction"), certif. denied, 72 N.J. 459, 371 A.2d 64 (1976).
Finally, the trial judge properly dismissed Elaine Trisuzzi's claim for negligent infliction of emotional distress resulting from her witnessing the encounter between her husband and the dog.
*26 The cause of action for negligent infliction of emotional distress requires proof of the following elements: (1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene; and (4) severe emotional distress. Portee v. Jaffee, 84 N.J. 88, 101, 417 A.2d 521 (1980). The trial judge concluded that Elaine's claim did not satisfy factors one and four of the Portee test. He found that neither the physical injuries which Elaine watched her husband sustain nor her resulting emotional distress were serious enough to give rise to liability under Portee. We agree. Elaine saw the dog jump on her husband, bite him on his hands and bite at his groin. The injuries to the hands were not serious enough to disable her husband, who wrapped the wounds in his T-shirt and, with his wife and daughter, walked home from the incident. His most serious claimed injury, that to his penis, did not manifest itself until well after his encounter with the dog.
Nor was Elaine's emotional distress sufficiently severe to give rise to a Portee claim. Elaine testified that she personally observed the dog jump on and bite her husband. Although the attack did not last long, to her it seemed "an eternity." She became "frozen with fear" and cried hysterically during the entire brief episode. After the incident, Elaine became afraid of strange unleashed dogs. She no longer walked or bicycled alone and carried a stick or mace with her at all times. She also began having nightmares.
Elaine saw a psychologist only five times because she felt she had to resolve her problems herself. Dr. Skinner, her clinical psychologist, diagnosed her as suffering from a simple phobia of dogs running loose. The symptoms included nightmares, anticipatory anxiety and feelings of guilt because she became paralyzed with fear at the time of the attack and was unable to protect her daughter. The doctor opined that had Elaine continued his recommended therapy, the phobia would have been resolved.
*27 To be compensable, emotional distress must be "sufficiently substantial to result in physical illness or serious psychological sequelae." Eyrich v. Dam, 193 N.J. Super. 244, 253, 473 A.2d 539 (App.Div.), certif. denied, 97 N.J. 583, 483 A.2d 127 (1983). Liability is imposed only where the distress is "sufficiently palpable, severe or enduring." Decker v. Princeton Packet, Inc., 116 N.J. 418, 431, 561 A.2d 1122 (1989). Elaine's claimed distress resulted in a fear of dogs, causing her to have nightmares. The only interruption in her daily life was that she no longer felt comfortable walking or bicycling by herself. The trial judge correctly concluded that this distress was not sufficiently severe to justify submitting the matter to the jury. Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 368, 544 A.2d 857 (1988) (mere aggravation, embarrassment, headaches and loss of sleep do not constitute severe emotional distress as a matter of law).
Reversed and remanded for a new trial as to liability under the dog bite statute, N.J.S.A. 4:19-16. Affirmed as to the verdict of no cause for action on the common law negligence claim and as to the dismissal of plaintiff Elaine Trisuzzi's claim for negligent infliction of emotional distress.