# United States Court of Appeals
## For the First Circuit

No. 17-1669

ROLAND G. HILL; MARY R. HILL,

Plaintiffs, Appellants,

v.

EDWARD WALSH, individually and in his official capacity as Chief
of the City of Taunton Police Department; CITY OF TAUNTON, MA;
DEBORAH LAVOIE; WILLIAM HENAULT; TROY ENOS; JOSEPH MARQUES,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Thompson, Circuit Judges.

Paul W. Patten for appellants.
Daniel F. de Abreau, First Assistant City Solicitor, for
appellee.

February 27, 2018

**LYNCH**, **Circuit Judge**.  In this opinion, we bring our circuit law into conformity with the Supreme Court's precedent on the emergency aid exception to the Fourth Amendment requirement that a warrant be obtained before police entry into homes.  We explain below.

On March 3, 2015, Matthew Hill, age 28, overdosed and was taken to Morton Hospital in Taunton, Massachusetts.  The next day, several Taunton police officers arrived at his parents' home to escort Matthew to a state court civil-commitment hearing.  On Matthew's sister's application, a Taunton district judge had issued a warrant earlier that day to apprehend Matthew pursuant to Mass. Gen. Laws ch. 123, § 35.  The warrant indicated both that Matthew was currently at the hospital and that his home address was 3 Eldridge Street.  The officers went to that address.  When two officers thought that they saw movement inside the home, but no one came to the door, the police entered, believing Matthew to be in danger of overdosing inside.  Damage was done to the home as the officers subdued the Hills' dogs upon entry.

Matthew's parents, who owned the home at 3 Eldridge Street, brought suit against the officers and the City of Taunton under 42 U.S.C. § 1983, alleging that the police's entry had violated their Fourth Amendment rights.  They also raised two related state law claims.  The district court entered judgment in favor of the officers and the City on all counts on the grounds

that there was no Fourth Amendment violation.  We affirm on a different basis.

Because the law on the emergency aid exception to the warrant requirement was not clearly established at the time of the incident, we uphold the district court's entry of judgment based on qualified immunity.  We also take this opportunity to clarify our circuit's emergency aid doctrine: officers seeking to justify their warrantless entry need only demonstrate "'an objectively reasonable basis for believing' that 'a person within [the house] is in need of immediate aid.'"  Michigan v. Fisher, 558 U.S. 45, 47 (2009) (alteration in original) (internal quotations omitted).  They do not need to establish that their belief approximated probable cause that such an emergency existed.  We thus modify our previous pronouncements in United States v. Martins, 413 F.3d 139 (1st Cir. 2005), and its progeny.

I.

The plaintiffs, Roland and Mary Hill, have lived at 3 Eldridge Street in Taunton, Massachusetts for over twenty years.  Their adult son, Matthew Hill, grew up there.  Over the last decade, Matthew has struggled with opioid addiction and substance abuse.  At the time of the incident giving rise to this case, Matthew was staying at 44 Weir Street, an apartment building owned by his father, and had done so for approximately six years.

- 3 -

A.    March 3, 2015 Incident

On the evening of March 3, 2015, Matthew's sister, Amanda Hill, called 911 upon discovering Matthew behind his building at 44 Weir Street, on the verge of an overdose. Matthew was barely able to stand, with "eyes . . . rolling to the back of his head." Amanda told the emergency responder that "Matthew . . . was going to kill himself if he didn't get help." An ambulance and police officers from the Taunton Police Department ("TPD") were immediately dispatched to 44 Weir Street.

After a violent struggle, the police subdued Matthew and transported him to Morton Hospital in Taunton. In response to the incident, the dispatcher on duty placed an entry in the police blotter indicating that Matthew had been taken to Morton Hospital. Matthew remained there as a patient until he was discharged into the TPD's custody on March 5, 2015.

B.    Application for a Section 35 Warrant

The next day, March 4, 2015, Amanda filed a petition in Taunton district court to civilly commit Matthew as a substance abuser pursuant to Mass. Gen. Laws. ch. 123, § 35. Section 35 permits the court to issue a warrant "for the apprehension and appearance" of an individual if "there are reasonable grounds to believe that [he] will not appear [at his civil commitment hearing] and that any further delay in the proceedings would present an immediate danger to [his] physical well-being . . . ." Id.

- 4 -

This was the second time Amanda had filed a section 35 petition as to Matthew. Her first attempt to have him committed, a few months before, was unsuccessful because the police had been unable to locate Matthew before the warrant for apprehension expired.

On March 4, 2015, the state district judge determined that a warrant for apprehension under Mass. Gen. Laws ch. 125, § 35, was necessary in Matthew's case, and issued one at 2:20 PM. The section 35 warrant had in its subject line, "Matthew Hill, 3 Eldridge Street." Directly below, in boldfaced text, it read: "CURRENTLY AT MORTON HOSPITAL." This information was taken from Amanda's petition, which listed "3 Eldridge Street" as Matthew's address, and indicated that he was currently at Morton Hospital. The section 35 warrant also stated that unless the subject of the warrant could be "brought before a judge prior to 4:30 PM on the same day that it is executed," it would expire.

C.   Execution of the Section 35 Warrant

The section 35 warrant was faxed to the TPD at 2:58 PM. The shift commander, Officer Joseph Marques, received the faxed warrant and initiated an incident report. Marques entered "3 Eldridge Street" -- not Morton Hospital -- into the TPD's dispatch system and gave the warrant to the dispatcher, Officer Deborah Lavoie. At approximately 3:18 PM, Lavoie handed the warrant to the patrol supervisor, Officer William Henault, and radioed for

- 5 -

another officer to help Henault execute the warrant at 3 Eldridge Street.[1]

After receiving the warrant, Henault immediately went to 3 Eldridge Street.  Upon arriving, he shook the chain-link fence surrounding the property because he knew that the Hills kept several large dogs on their property.  Shortly thereafter, Officer Troy Enos responded to Lavoie's dispatch and joined Henault.  Having ascertained that the dogs were not in the yard, both officers went to the front door.

Henault knocked, but received no response.  He then peered into the home through a glass pane on the side of the door.  Henault was startled to see one of the dogs lunge against the glass.  When he looked again, he said he saw a curtain move and "a silhouette of something there, a figure of some sort, that

---

[1]     All three officers testified during their depositions that they did not see the reference to Morton Hospital on the face of the section 35 warrant.  In fact, according to Henault, "five or six people [had] looked at [the warrant]," and not a single person noticed the language.

Marques and Henault both attributed this to the fact that past versions of the section 35 warrant used a different "form, format and font," which caused the words "CURRENTLY AT MORTON HOSPITAL" to "blend[] in."  They said that the notation at issue used to be handwritten or typed into the subject line itself -- not included elsewhere on the page.  Initially, though, Henault admitted that he did not notice the text because "any type of print below [the subject line] isn't something that [the police] would typically review on . . . every warrant."

Lavoie testified that she did not recall whether she had read the warrant before issuing the radio dispatch.

disappeared out of sight" in a rear room. Enos also testified that when he looked into the house, he "saw a curtain move" and thought that a person was inside.

Henault and Enos then walked around the house, calling out Matthew's name. They discovered that the side door was unlocked, but they were reluctant to enter the home because the dogs "were trying to get [them]" when they pulled the door ajar. Unsure of what to do, Henault and Enos returned to their cruisers to call dispatch. It was at this moment that the Police Chief, Edward Walsh, arrived.

Henault explained to Walsh that they were attempting to serve a section 35 warrant of apprehension for Matthew. Henault mentioned that although this was Matthew's parents' home, and Matthew lived at 44 Weir Street, he thought he had seen a shadow of a person inside, and was unable to verify if it was Matthew. After the briefing, Walsh instructed Henault to see if the dispatchers had any additional information about Matthew or the section 35 warrant. When Henault reached out to Lavoie and Marques, they said that they did not.

At this point, Walsh made the decision to go inside the house. He instructed Enos to retrieve the fire extinguisher from his cruiser. The three officers then entered through the unlocked side door, sprayed the fire extinguisher three times to keep the

dogs back, and conducted a sweep of the premises. They found no one at home.

Due to the damage caused by the fire extinguisher, the Hills vacated their home for five days and engaged in extensive cleaning to make it habitable.

D.   U.S. District Court Proceedings

On February 10, 2016, the Hills filed suit against Officers Marques, Lavoie, Henault, and Enos in their individual capacities; against Chief Walsh in his individual and official capacity; and against the City of Taunton. The Hills brought a claim under 42 U.S.C. § 1983, alleging that the officers had violated their Fourth Amendment rights, and also raised two state law claims: intentional infliction of emotional distress ("IIED") and trespass. After discovery, the defendants filed a motion for summary judgment on all counts.

The district court entered summary judgment for the defendants on June 29, 2017. Hill v. Walsh, No. 16-10225, 2017 WL 2818987 (D. Mass. June 29, 2017). It found that the officers did not commit a Fourth Amendment violation because their conduct fell within the emergency aid exception to the warrant requirement. Id. at *3-5. The district court also noted that even if the officers had violated the Fourth Amendment, they had a "strong case" that they were entitled to qualified immunity because "there is no clearly established Supreme Court precedent" governing

- 8 -

whether a section 35 warrant is sufficient to establish exigent circumstances to enter a third party's home. Id. at *5 n.6. Lastly, the district court dismissed the plaintiffs' municipal liability and state law claims. Id. at *5-6.

The Hills timely filed this appeal on June 30, 2017.

II.

We review de novo the district court's entry of summary judgment against Roland and Mary Hill on all of their claims. See Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991). Summary judgment is appropriate here because no "reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the [plaintiffs]," Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 187 (1st Cir. 1997), could resolve the dispute in the plaintiffs' favor.

The district court granted the defendants' motion for summary judgment on the ground that they did not violate the Fourth Amendment.

We affirm on the basis that the officers are entitled to qualified immunity and no claim is stated against the City.

A. Section 1983 Claim

The standard for qualified immunity is familiar: as the Supreme Court stated this year, officers are immune from suit under § 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct

- 9 -

was 'clearly established at the time.'" <u>District of Columbia</u> v. <u>Wesby</u>, No. 15-1485, slip op. at 13 (U.S. Jan. 22, 2018) (quoting <u>Reichle</u> v. <u>Howards</u>, 566 U.S. 658, 664 (2012)).

Because qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law," <u>Malley</u> v. <u>Briggs</u>, 475 U.S. 335, 341 (1986), the existing precedent at the time of the officers' conduct "must be clear enough that <u>every reasonable official</u> would interpret it" to bar the conduct at issue, <u>Wesby</u>, slip op. at 14 (emphasis added). Although plaintiffs are not required to identify controlling precedent with "identical[]" facts, we have held that "clearly established law" must be sufficiently "particularized" to serve "as a fair and clear warning" that the officers' conduct is unconstitutional. <u>Alfano</u> v. <u>Lynch</u>, 847 F.3d 71, 76 (1st Cir. 2017) (quoting <u>Anderson</u> v. <u>Creighton</u>, 483 U.S. 635, 640 (1987)).

The Hills argue that <u>Brigham City</u> v. <u>Stuart</u>, 547 U.S. 398 (2006), and its progeny, constitute clearly established law and dictate that the officers' entry was objectively unreasonable. We disagree. The "contours," <u>Wesby</u>, slip op. at 14, of the emergency aid doctrine laid out in <u>Brigham City</u> would not have given a fair and clear warning to the officers here.

In <u>Brigham City</u>, the Supreme Court excused the officers' warrantless entry into the home where they had witnessed an "altercation" in the kitchen between four adults and a juvenile,

- 10 -

who punched one of the adults, causing the adult to "spit[] blood." 547 U.S. at 400-01. The Court reasoned that in light of the "ongoing violence occurring within the home," id. at 405, the police had "an objectively reasonable basis for believing that an occupant [was] seriously injured or imminently threatened with such injury," id. at 400.

Here, the officers allege that they entered 3 Eldridge Street because (1) they received a section 35 warrant of apprehension for Matthew, which was issued by a judge who determined that "there [were] reasonable grounds" to believe Matthew would not appear for his civil commitment hearing, and, importantly, that "any further delay in the proceedings would present an immediate danger to [his] physical well-being," Mass. Gen. Laws ch. 123, § 35; (2) the warrant stated "3 Eldridge Street," in its subject line; (3) Officers Henault and Enos thought that they saw a person inside 3 Eldridge Street, whom they believed -- but could not confirm without entry -- was Matthew; and (4) a door to the home was unlocked, and the officers assumed the door would have been secured if the house was unoccupied.

There is no clearly established law on point. The Supreme Court has never addressed whether a section 35 warrant -- or any warrant to compel attendance at a civil commitment hearing, for that matter -- is sufficient to justify the police's warrantless entry into the home pursuant to the emergency aid

- 11 -

exception.  We have also never had the occasion to consider section 35 warrants in this context.[2]

The district court also aptly pointed to a second wrinkle: this court's language and the test adopted by the Supreme Judicial Court of Massachusetts disagree as to the government's burden of proof under the emergency aid exception.  Compare United States v. Infante, 701 F.3d 386, 392 (1st Cir. 2012) ("The burden is on the government to show a reasonable basis, approximating probable cause . . . ." (emphasis added)), with Commonwealth v. Duncan, 7 N.E.3d 469, 473 (Mass. 2014) ("Although the broader 'exigent circumstances' exception generally requires a showing of probable cause, such a showing is not necessary in emergency aid situations, because the purpose of police entry is not to investigate criminal activity.").

We take this opportunity to clarify our circuit law.  In light of the Supreme Court's most recent decision on the emergency aid exception, Michigan v. Fisher, we hold that the government need not show probable cause, only "an objectively reasonable

---

[2]    Defendants urge us to extend McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540 (1st Cir. 1996), to section 35 cases.  There, we held that the police did not violate the Fourth Amendment when they entered a residence without a warrant to "execute a pink paper" -- a civil commitment order issued by a medical professional pursuant to Mass. Gen. Laws ch. 123, § 12(a). Id. at 542-43, 548.  We decline to do so.  We need not -- and do not -- decide whether a section 35 warrant is sufficient per se to justify warrantless entry into the home.

basis" for believing that a person inside the home is need of immediate aid, 558 U.S. at 47 (quoting Brigham City, 547 U.S. at 406), in order to effectuate a warrantless entry.  This basis need not "approximate probable cause."

Infante attributes the language, "approximating probable cause," to this court's decision in United States v. Beaudoin, 362 F.3d 60, 80 (1st Cir. 2004), vacated sub nom. Champagne v. United States, 543 U.S. 1102 (2005).  See Infante, 701 F.3d at 392-93. But the Beaudoin court never imposed this standard.  Instead, the language was first adopted by Martins, 413 F.3d 139.  Martins has since been superseded by Michigan v. Fisher, which makes no mention of probable cause -- only an "objectively reasonable basis."  558 U.S. at 47.

We offer this clarification to bring our case law in line with Supreme Court precedent.  The Court's choice of language is instructive.  It used "objectively reasonable basis" for the officers' belief; it did not use the familiar tests of "reasonable suspicion" or "probable cause."  At least two of our sister circuits have also so concluded.  See United States v. Toussaint, 838 F.3d 503, 508-09 (5th Cir. 2016) (adopting the "objectively reasonable basis" standard); Schreiber v. Moe, 596 F.3d 323, 330 (6th Cir. 2010) (same).

The Hills' only rejoinder is that regardless of the contours of the emergency aid exception, it was not "objectively

reasonable" for the officers to believe that Matthew was inside 3 Eldridge Street. They argue that the face of the section 35 warrant clearly indicated that Matthew was "CURRENTLY AT MORTON HOSPITAL," a fact the officers would have "reasonably known" or "discover[ed]," United States v. Tibolt, 72 F.3d 965, 969 (1st Cir. 1995), had any of them read the warrant carefully, or had Officer Henault reviewed the police blotter, or had Officers Marques or Lavoie verified Matthew's location when radioed.

But hindsight is twenty-twenty. The officers' actions do not establish that the decision to enter the home was not objectively reasonable at that time. Given Matthew's history of overdosing and resisting the police, the subject line of the warrant (3 Eldridge Street), and the appearance of a person inside the home, a reasonable officer could have reasonably concluded that her entry was lawful pursuant to the emergency aid exception. We cannot say no reasonable officer would have thought the entry constitutional. And where there is reasonable debate about the constitutionality of the officers' actions, there is qualified immunity.

B.  Municipal Liability

Summary judgment was also correctly entered for the City on each of the Hills' two claimed theories regarding municipal liability.

- 14 -

First, the Hills allege that the "pervasive practice of not reading warrants" in the TPD raises a genuine issue as to whether the City of Taunton is liable for the officers' conduct because of its failure to train and supervise its officers. See Connick v. Thompson, 563 U.S. 51, 60 (2011). But this is a gross mischaracterization of the record. Aside from Officer Henault's off-the-cuff remark that "any type of print below [the subject line] isn't something that we would typically review on . . . every warrant," there is no evidence in the record supporting the Hills' conjecture that TPD officers -- as a matter of course -- do not read warrants. Plaintiffs cannot rest on "'conclusory allegations, improbable inferences, [or] unsupported speculation' to defeat a motion for summary judgment." Saunders v. Town of Hull, 874 F.3d 324, 331 (1st Cir. 2017) (alteration in original) (quoting Welch v. Ciampa, 542 F.3d 927, 935 (1st Cir. 2008)).

Further, the claim based on the City's alleged failure to train officers to read warrants does not rise to the level of "deliberate indifference." Connick, 563 U.S. at 62. The Supreme Court has held that a "pattern of similar constitutional violations" is "ordinarily necessary" to establish municipal liability, id. (quoting Bd. of Cty. Comm'rs of Bryant Cty. v. Brown, 520 U.S. 397, 409 (1997)), unless "the need for more or different training is so obvious and the inadequacy [is] so likely

- 15 -

to result in the violation of constitutional rights," <u>City of Canton</u> v. <u>Harris</u>, 489 U.S. 378, 390 (1989).  Here, there is no evidence of past violations, and what happened to the Hills is not "so obviously" the consequence of a systemic lack of training, as opposed to the decisions of individual officers.

The Hills' second theory is the contention (in two cursory sentences) that Walsh's decision to go into their home gives rise to municipal liability because he was the Police Chief. However, they fail to allege -- let alone substantiate -- that Walsh was the final policymaker in this case under Massachusetts law.  <u>See</u> <u>Pembaur</u> v. <u>City of Cincinnati</u>, 475 U.S. 469, 481-83 (1986) (holding that municipal liability only arises in cases where the municipal actor was the final policymaker, as defined by state law).  This claim has been waived.  <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

C.    <u>State Law Claims</u>

Finally, the district court correctly entered summary judgment against the Hills' two state law claims: IIED and trespass.

Under Massachusetts law, IIED requires proof of "extreme and outrageous conduct."  <u>Agis</u> v. <u>Howard Johnson Co.</u>, 355 N.E.2d 315, 318 (Mass. 1976).  The parties do not dispute that the officers here entered 3 Eldridge Street for the sole purpose of saving Matthew.  That is neither extreme nor outrageous.  And the

trespass claim is also without merit because the police clearly had license to enter to render aid.  See Rossi v. DelDuca, 181 N.E.2d 591, 593 (Mass. 1962) ("[O]ne is privileged to enter land in the possession of another if it is, or reasonably appears to be, necessary to prevent serious harm to the actor or his property.").  That ends the matter.

## III.

Because the district court correctly entered judgment against the Hills on all counts, we affirm.  No costs are awarded.