**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4055-16T4

PATTI ANN LUKER OAKERSON
and KEITH OAKERSON, her
husband,

      Plaintiffs-Appellants,

v.

SIN VENTURES MAPLE SHADE,
LLC,

      Defendant,

and

BJ'S WHOLESALE CLUB,
INC.,

      Defendant-Respondent.

_____

      Argued December 18, 2018 – Decided January 22, 2019

      Before Judges Fisher, Geiger and Firko.

      On appeal from Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1956-14.

Sherri L. Warfel argued the cause for appellant (Stark & Stark, PC, attorneys; Sherri L. Warfel, of counsel; Alex J. Fajardo, on the brief).

John M. Wutz argued the cause for respondent (Chartwell Law Offices, LLP, attorneys; John M. Wutz, on the brief).

PER CURIAM

Plaintiffs Patti Ann Luker Oakerson and Keith Oakerson appeal from a jury verdict of no cause of action in favor of defendant BJ's Wholesale Club following a five-day trial.[1]  We affirm.

Plaintiff was injured when she slipped and fell on wet asphalt while walking across the marked pedestrian path in the parking lot of a BJ's Wholesale Club (BJ'S) store during a rainstorm.  Plaintiff suffered a fractured patella and Lisfranc joint injury and underwent surgery for both injuries.  She sued BJ's, which owned and maintained the property, claiming she fell due to a hazardous condition that resulted from negligent maintenance.  BJ's denied it was negligent and claimed plaintiff was negligent.

At trial, plaintiff's engineering expert testified that the parking lot was sloped so water would run from the building through the parking lot to a

---

[1]  References to plaintiff will mean only Patti Ann Luker Oakerson.  Her husband, Keith Oakerson, sought only per quod damages.

retention basin. Plaintiff's expert also testified there were no violations of any code, regulation, or law in the design or construction of the parking lot.

On April 11, 2017, the jury determined by a five-to-one vote that B.J.'s was not negligent. This appeal followed.

Plaintiff argues the trial court erred by (1) permitting defendant to argue that an absent party was negligent; (2) accidentally destroying the notes of a replacement juror; (3) failing to pose appropriate open-ended questions during jury selection; (4) confusingly and erroneously instructing the jury on negligence, comparative negligence, proximate cause, and burden of proof; and (5) committing errors, which cumulatively warrant a retrial. None of these issues were raised before the trial court.

Plaintiff first argues BJ's asserted a claim against an absent defendant during their opening argument. Opening statements should "do no more than inform the jury in a general way of the nature of the action and the basic factual hypothesis projected, so that they may be better prepared to understand the evidence." Berkowitz v. Soper, 443 N.J. Super. 391, 408 (App. Div. 2016) (quoting Passaic Valley Sewerage Comm'rs v. Geo. M. Brewster, etc., Inc., 32 N.J. 595, 605 (1960)).

In its opening, BJ's explained that plaintiff's expert would testify that, before installing medians in the parking lot, an engineering firm had to be hired and plans had to be submitted for approval by multiple municipal and county agencies. BJ's point was that "you have multiple engineers looking at his design, all of whom said this is a safe zone." BJ's went on to say that it intended to prove, through plaintiff's expert's testimony, that the "approval process [to install the medians] included multiple reviews with multiple experts and multiple engineers" who all approved the plans. Negligence was never raised against an absent party. BJ's opening statement asserted the parking lot was safe, not that some other party was negligent.

On cross-examination, plaintiff's expert testified there were no "violations of any codes or laws" in the design or construction of the parking lot. The expert clarified he was not saying another engineering firm "was negligent for coming up with these plans." BJ's then used the expert to establish the plan was subject to a multi-tiered approval process, as asserted in BJ's opening statement.

"[C]ounsel is allowed broad latitude in summation." Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999). That latitude is not without limits, however. Hayes v. Delamotte, 231 N.J. 373, 387 (2018). "[C]ounsel's comments must be confined to the facts shown or reasonably

A-4055-16T4

suggested by the evidence introduced during the course of the trial." Ibid. (quoting Colucci, 326 N.J. Super. at 177). "Counsel 'should not misstate the evidence nor distort the factual picture.'" Ibid. (quoting Colucci, 326 N.J. Super. at 177). "Within those limits, however, '[c]ounsel may argue from the evidence any conclusion which a jury is free to reach.' 'Further, 'counsel may draw conclusions even if the inferences that the jury is asked to make are improbable. . . .'" Id. at 388 (quoting Colucci, 326 N.J. Super. at 177).

During its closing argument, BJ's reasserted it did not violate any standards, laws, or code, and advanced this theory by explaining the various boards, entities, and engineers that had reviewed and approved the plans. BJ's also used these various approvals to discredit plaintiff's expert testimony that there was something wrong with the parking lot.

We find no merit in plaintiff's contention that BJ's asserted a negligence claim against an absent defendant in its opening statement, the testimony of its witnesses, or its closing argument. On the contrary, BJ's asserted defenses that the parking lot was objectively safe and it was plaintiff who was negligent.

At the court's discretion, jurors may be allowed to take notes during trial. R. 1:8-8(c). The trial court allowed the jurors to take notes. The court was then obligated to "ensure the security and confidentiality of each juror's notes." Ibid.

Prior to the start of the trial, the judge instructed the jurors that their notes will not be evidence during deliberation; the notes are to refresh their recollection, not replace it; and their "recollection of the evidence will be more significant than a note."

On the morning of the second day of deliberations, the trial court informed the parties that an alternate juror would be necessary because one of the jurors was ill. Rule 1:8-2(d)(1) permits the impaneling of an alternate juror. Where an alternate juror is substituted, "the court shall instruct the jury to recommence deliberations and shall give the jury such other supplemental instructions as may be appropriate." Ibid. Both parties agreed to the selection of an alternate by coin flip.

After being selected, the alternate juror asked for her notes; the trial judge informed her, and the parties, that her notes were shredded accidently and could not be provided. The trial judge asked the juror whether this would create a problem for her, to which the juror replied, "No." After plaintiff's testimony was played back for the jury, deliberations recommenced with the addition of the alternate juror. No further read backs were requested.

Plaintiff argues that the alternate juror's inability to rely on her notes may have caused her to not fully deliberate and that she was at a significant

disadvantage during deliberations. Because neither party objected to the alternate juror or to any prejudice from the accidental destruction of the juror notes, we review the issue under the plain error standard. R. 2:10-2. For plain error to be found, the error must be "clearly capable of producing an unjust result." Ibid. We find no such plain error. This was a five-day trial of a routine slip and fall case. When asked by the court whether the lack of notes would be an issue for the alternate juror, she unequivocally said "no." No additional read backs were requested. The record does not support plaintiff's contention that the alternate juror needed her notes or not having her notes created a material disadvantage for her.

Plaintiff next argues the trial court committed reversible error by failing to ask appropriate open-ended questions during jury selection. During voir dire, trial judges are required to ask each potential juror "some open-ended questions . . . to elicit a verbal response." Administrative Directive #04-07, "Jury Selection – Model Voir Dire Questions" (May 16, 2007). The open-ended questions "should elicit open-ended answers." Ibid. While this directive is "unquestionably binding on all trial courts," the judge is allowed discretion "to accommodate the individual circumstances of each case and the consensus views of counsel, even when doing so renders the voir dire procedure less than fully

A-4055-16T4

conforming to the Directives' mandates." Gonzalez v. Silver, 407 N.J. Super. 576, 597-98 (App. Div. 2009).

Regarding this issue, plaintiff avers the judge failed to conform to the requirements of the Directive by asking each juror an open-ended question regarding tort reform. The judge did ask potential jurors open-ended questions seeking biographical information and their personal experiences with B.J.'s. When asked if they had any additional follow up questions, counsel responded in the negative. Because plaintiff did not object to the open-ended questions posed to potential jurors, the plain error standard applies. Plaintiff has not demonstrated the jury selection process was "clearly capable of producing an unjust result." We find no plain error.

Plaintiff contends for the first time on appeal that the trial court improperly charged the jury with regard to negligence, proximate cause, and burden of proof. We again apply the plain error standard of review.

When reviewing a jury charge, the reviewing court must read the charge as a whole. Myrlak v. Port Auth. of N.Y. & N.J., 157 N.J. 84, 107 (1999). "It is fundamental that '[a]ppropriate and proper charges to a jury are essential for a fair trial.'" Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 256 (2015) (quoting Velazquez ex rel. Velazquez v. Portadin, 163 N.J. 677, 688 (2000)).

"A jury is entitled to an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case." Ibid. (quoting Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002)).  The trial judge "should 'mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case.'" Trisuzzi v. Tabatchnik, 285 N.J. Super. 15, 25 (App. Div. 1995) (quoting State v. Conception, 111 N.J. 373, 379 (1988)).

Plaintiff contends that the trial judge committed reversible error by not reading directly from the model jury charges, by mixing up the plaintiff and defendant, and by charging comparative negligence prior to giving a negligence charge.  Plaintiff first argues the following portion of the jury charge created confusion:

> In determining whether reasonable care has been exercised, you will consider whether the defendant or the plaintiff – because we're talking about two allegations here – . . . ought to have foreseen under the attendant circumstances . . . that the natural and probable consequences of its or her action – or omission to act would have been some injury.
>
> [(Emphasis added).]

The language used by the trial judge is largely from the model jury charge, Model Jury Charges (Civil), 5.10B, "Foreseeability" (approved before 1984);

the added language explained that BJ's had asserted a negligence claim against plaintiff. The two subsequent paragraphs of the jury charge cited by plaintiff are identical to the model jury charge on foreseeability. See ibid.

Plaintiff next cites the instruction relating to proximate cause. The trial court explained the necessary elements as to whether BJ's proximately caused plaintiff's injuries using the language of the model jury charge. See Model Jury Charges (Civil), 6.10, "Proximate Cause" (approved May 1998). The trial court then gave a proximate cause charge regarding plaintiff's conduct, again using the language of the model jury charge but referring to plaintiff.

To clarify the issue, the trial court instructed the jury: "[I]n this case we have . . . two competing assertions of negligence, one by the plaintiff and one by . . . [BJ's] for which they assert absolute negligence or contributor[y] negligen[ce]." Again, plaintiff did not object.

The trial court concluded its proximate cause instruction, by stating the "basic question" was whether plaintiff's injuries were connected to B.J.'s negligent actions, using language from the model jury charge but providing additional instruction regarding BJ's claim against plaintiff. The trial court then instructed:

> Again, I would point out to you that there is a counter-assertion asserted by B.J.'s that [plaintiff] was negligent

and that her ensuing action resulted in her own injuries and losses and harms for which she should not be compensated as a result of her . . . own injuries or losses.

Plaintiff contends the instructions caused juror confusion regarding plaintiff's burden of proof. She further argues the trial court confused plaintiff and defendant during the jury charges, but offers no citation or example of such an error.

The jury instructions in question were derived largely from the model charges, with modifications to take into account defendant's comparative negligence defense. "It is difficult to find that a charge that follows the Model Charge[s] so closely constitutes plain error." Mogull v. C.B. Commercial Real Estate Group, 162 N.J. 449, 466 (2000). The charges were not misleading or confusing. Moreover, when the jury asked for the definition of "negligence" to be re-read to them, the trial court read Model Jury Charges (Civil), 5.10A, "Negligence and Ordinary Care" (approved before 1984) twice for the jury and sent a copy of the model charge back with the jury to use as a reference during deliberations. Again, plaintiff did not object. We discern no plain error by the trial court.

Finally, plaintiff argues the cumulative effect of the trial courts alleged errors warrants a retrial. "An appellate court may reverse a trial court's judgment

11

if 'the cumulative effect of small errors [is] so great as to work prejudice[,]'" rendering the trial unfair. <u>Torres v. Pabon</u>, 225 N.J. 167, 190 (2016) (first alteration in original) (quoting <u>Pellicer ex rel. Pellicer v. St. Barnabas Hosp.</u>, 200 N.J. 22, 53 (2009)). In light of our rulings, we discern no cumulative error rendering the trial unfair.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4055-16T4